HICKINBOTHAM *v.* WILLIAMS, CHANCELLOR.

4881-4882                                    305 S. W. 2d 841

Opinion delivered October 14, 1957.

[Rehearing denied November 11, 1957.]

*Kenneth Coffelt,* for petitioners.

*Bailey, Warren & Bullion,* for respondent.

CARLETON HARRIS, Chief Justice. These cases are here for review on petition for *certiorari* brought by petitioners, J. H. Hickinbotham and H. V. Hickinbotham.

On April 15, 1957, this Court affirmed the action of the Pulaski Chancery Court (2nd Division) in enjoining and restraining H. V. Hickinbotham from violating Ordinance No. 10206 of the City of Little Rock, which ordinance prohibits the operation of grocery stores on Sunday.[1] The injunction was obtained at the instance of several Little Rock grocermen. Subsequent to the entering of a temporary injunction, issued September 14, 1956, the store remained open on September 23rd, 30th, and October 7th. Following the entering of the permanent injunction, October 8th, the store remained in operation, being operated either by H. V. Hickinbotham, or his father, John H. Hickinbotham, for 32 Sundays, commencing October 14, 1956, through May 19, 1957. On petition of the plaintiffs, (the grocery store operators heretofore mentioned) the Hickinbothams were directed to appear in Chancery Court to show cause why they should not be held in contempt. At the conclusion of the hearing on May 28, the court found both to be in contempt, and assessed as punishment, a fine of $1,900 for each, and directed that each be placed in the Pulaski County jail for a period of 190 days. Bond was approved by this Court

---

[1] See *Hickinbotham* v. *Corder,* 227 Ark. 713, 301 S. W. 2d 30.

48

pending action on the petition. In seeking this review, petitioners rely upon five points, as follows:

## I.

The judgments violate petitioners' right under the Fourteenth Amendment to the Federal Constitution.

## II.

The judgments and the proceedings violate the petitioners' rights under the Sixth Amendment to the Federal Constitution.

## III.

The injunction order is not broad enough to cover J. H. Hickinbotham.

## IV.

There is no competent evidence in the record to sustain the convictions.

## V.

The penalty assessed is excessive and unreasonable on its face, and because the numerous acts charged as being contemptuous are in fact only one act and one violation and one transaction.

We shall proceed to discuss each point in order.

## I.

Petitioners argue that these "convictions" deny them equal protection of the law under the Fourteenth Amendment. In the contempt proceedings before the trial court, petitioners offered to prove that on September 23rd, and each of the succeeding Sundays referred to in the testimony, there were various and numerous establishments "that were open in Little Rock from which, on these particular dates, groceries, fruits, meats, and vegetables were being sold, and that no other arrests were made except one of the defendants in this case."[2] Suf-

---

[2] For discussion of this argument, see *Hickinbotham* v. *State*, 227 Ark. 1032, 303 S. W. 2d 565; *Taylor* v. *City of Pine Bluff*, 226 Ark. 309, 289 S. W. 2d 679.

fice it to say that this was not an action wherein petitioners were being tried for a violation of the city ordinance, but rather the sole issue before the court was whether or not its order had been willfully violated. The trial court so held, with which holding we entirely agree.

## II.

The original plaintiffs, some twenty Little Rock grocermen, at whose instance the injunction was granted, did not appear or testify in the proceeding held May 28. Petitioners contend that under the Sixth Amendment to the Federal Constitution, they were "entitled to be confronted by their accusers." This statement is apparently made with reference to that part of Amendment Six which provides that an accused has the right ". . . to be confronted with the witnesses against him; . . ." *Petitioners were confronted with witnesses,* who testified to the acts alleged to be in violation of the restraining order. Seven city policemen testified that the store was open for business on the Sundays heretofore mentioned, and, in fact, this is not denied by petitioners. Contempt is not a matter between opposing litigants. The offense was not committed against the grocermen. The acts alleged, if proven true, were offenses against the court, and such acts could be established by any relevant and competent evidence. If petitioners desired the testimony of any of the grocermen, they should have had them subpoenaed for the hearing. The argument is without merit.

## III.

Petitioners contend that the injunction order, which was issued against H. V. Hickinbotham, is not broad enough to include J. H. Hickinbotham. Both the temporary and permanent injunctions granted by the court were directed only to petitioner H. V. Hickinbotham, and do not include the language "agents, servants, employees, etc." The record reflects that J. H. Hickinbotham is the father of H. V. Hickinbotham, and one of the co-owners of the grocery store. It is stipulated that J. H. Hickinbotham was present in Chancery Court at all of

the proceedings against H. V. Hickinbotham, and that he was present in the store involved, helping to operate it, on each of the Sundays during the period involved in this proceeding. J. H. Hickinbotham had knowledge of the rendition of the order. There is no plea that he was an "innocent violator." The restraining order issued by the court was designed to close the store on Sundays, and the actions of J. H. Hickinbotham were knowingly done and were violative of such order. From American Jurisprudence, Volume 12, Section 26: "The violation or disobedience of an injunction order issued by a court having jurisdiction in the matter, when committed by a party to the injunction suit, *or by a third party having actual notice*,[3] is a contempt of court, and is punishable as such by the tribunal issuing the order; . . . This rule is not confined to parties to the injunction. . . ." Our own Court has so held in *Hudkins* v. *Arkansas State Board of Optometry,* 208 Ark. 577, 187 S. W. 2d 538.

## IV.

Petitioners' argument is here disposed of under point II.

## V.

In directing our attention to this contention, it might be well to mention the principal purposes in punishing for contempt. Fines and jail sentences are given, not only as punishment for disregarding the court's orders, but of equal importance, for the purpose of deterring a defendant from future disregard of such orders. Not only does such action act as a deterrent to the particular defendant charged with contempt, but also to others who might contemplate disobedience of a court order. To summarize, contempts are punishable because of the necessity of maintaining the dignity of, and respect toward, the courts, and their decrees. No evidence in mitigation was introduced. The proof simply reflected that petitioners continued to operate on Sunday, either in disregard, or defiance of the injunction. Each violation, of course, constituted contempt. To hold otherwise would

---

[3] Emphasis supplied.

have the effect of saying that once an order had been disregarded, it could thereafter be violated with impunity, and punishment rendered only for the original violation. Petitioner's argument is patently unsound.

One should never be permitted to profit by his violations of the law, and we therefore affirm the action of the court in assessing a fine of $1,900 each; however, we feel that a lesser jail sentence will serve fully as well to deter these petitioners from future acts in violation of the injunction. We accordingly conclude that the jail sentences should be reduced to sixty days for each offender. With such modification, the order is affirmed.