Dan IVY *v.* The Honorable Tom J. KEITH, Judge

02-283 92 S.W.3d 671

Supreme Court of Arkansas
Opinion delivered December 12, 2002

*Doug Norwood* and *Susan Lusby*, for petitioner.

No response.

ROBERT L. BROWN, Justice. Petitioner Dan Ivy petitions this court for a writ of *certiorari* that respondent, Honorable Tom J. Keith, circuit judge, has exceeded his authority in sentencing Mr. Ivy to jail for thirty-six days for contempt of court.[1] In the alternative, Mr. Ivy appeals Judge Keith's order that he serve this sentence for contempt. The respondent, Judge Keith, found the petitioner in contempt of court after he failed to pay Rule 11 sanctions in connection with a civil case tried in his court. Judge Keith sentenced Mr. Ivy to thirty-six days in jail. He also orally ordered a payment schedule of $1,000 a month to begin sixty days after release from jail. On March 27, 2002, this court stayed Judge Keith's order and granted Mr. Ivy's motion for expedited appeal. Judge Keith has requested that the Attorney General not file a brief on his behalf. We are, therefore, limited in our review to Mr. Ivy's brief in support of the petition.

The facts leading up to the Rule 11 sanctions are taken from Judge Keith's Order for Rule 11 Sanctions. On March 2, 2001, Mr. Ivy filed a civil lawsuit on behalf of Jerry Otis for damages arising from a car accident between Otis and Helen R. Walton. In his complaint, Mr. Ivy prayed for punitive damages on the basis that Mrs. Walton was intoxicated at the time of the accident and the Bentonville Police Department "knowingly protected her reputation." On November 16, 2001, Judge Keith granted partial

---

[1] Mr. Ivy's brief shows "State of Arkansas, Benton County Circuit Court–Div. I, and Benton County Sheriff Andy Lee" as respondents. We conclude that Hon. Tom J. Keith, as shown on the record of this case, is the more appropriate party for a *certiorari* petition.

summary judgment in favor of Mrs. Walton on the punitive damages issue, finding that there was "not even a scintilla of evidence" supporting Mr. Ivy's allegations made on behalf of Otis.

Mr. Ivy refused to retract his claim on behalf of Otis, however, and subsequently, according to Judge Keith, "compounded the seriousness of the [Rule 11] violation by restating the allegation in an amended complaint and various other pleadings filed with the Court." On December 7, 2001, Judge Keith found that Mr. Ivy's allegations on behalf of Otis "were not made in good faith, but rather were imposed for an improper purpose" and, thus, violated Rule 11 of the Arkansas Rules of Civil Procedure. Judge Keith's order for Rule 11 sanctions imposed a $12,085.27 fine on Mr. Ivy which amount corresponded to opposing counsel's attorneys' fees and costs. The sanction was to be paid within thirty days. The Rule 11 order also stated: "The failure to pay this sanction within 30 days of the entry of this Order shall constitute contempt of court."

On January 25, 2002, during a pretrial hearing on the Otis case, Mr. Ivy told Judge Keith that he had been served with an order for Rule 11 sanctions. Mr. Ivy questioned the judge about whether the contempt threat was standard practice in his court. The judge replied, "That's—that's the Court's order, Mr. Ivy." Mr. Ivy then asked whether, if he was unable to pay the sanction, should he submit himself to go to jail. Judge Keith responded, "If you want — if you want to admit contempt of Court and go to jail, that's up to you."

On February 11, 2002, in an effort to settle with Mrs. Walton, Mr. Ivy sent a letter to Mrs. Walton's counsel and offered to pay the Rule 11 sanctions at a rate of $500.00 per month, beginning on March 1, 2002. The next day, Mrs. Walton's counsel alerted Judge Keith that Mr. Ivy had made no payments on his fine and of Mr. Ivy's settlement offer, which counsel maintained he had no power to accept because it would violate the Judge's order.

On February 20, 2002, Judge Keith issued a summons for Mr. Ivy to appear in court on March 7, 2002, and show cause why

he should not be held in contempt for violating the judge's Rule 11 order.

On March 7, 2002, Judge Keith conducted the contempt hearing, at which time Mr. Ivy told Judge Keith that the reason he had not complied with the order was he did not have enough money to pay the Rule 11 sanctions. The judge asked Mr. Ivy if he had any evidence in support of his claim of inability to pay. Mr. Ivy replied that he was under oath as an attorney to tell the truth, and then related a litany of financial problems: he stated that he owed $300,000 to the IRS as the result of a divorce, that he had lost all of his office assets to satisfy a judgment against him and that his mother had bought them at auction, and that he owned no assets beyond clothing and personal possessions. Mr. Ivy recounted previous times that he had been ordered to pay money to the other side and reminded the court that he had always paid his fines on those occasions. Mr. Ivy related that the nature of his practice was such that he had an uneven cash flow from one day to the next.

The following colloquy then occurred:

MR. IVY: It would be difficult for me to come up with $500 today, in fact I couldn't, but tomorrow I could have $20,000 in my pocket. . . . I have taken a vow of poverty when I became a minister —

THE COURT: I don't want to hear that. I agree with that old sage who says religion and patriotism become the last refuge of scoundrels. And I don't want to hear that. This is a civil courtroom and I don't want to hear that.

MR. IVY: Then I wish to object, your Honor.

THE COURT: Well, I don't care if you object.

MR. IVY: And I wish to proffer.

THE COURT: I — I don't care. You're — what your religious leanings or practices are is your business but it's not a part of this proceeding.

MR. IVY: Then God has no place in your courtroom, Your Honor?

THE COURT: What your religious practices are, Mr. Ivy, do not have any part in this proceeding. Now, you may continue, but — but I don't want — what you do in your religious practice is your business, it's not a part of this proceeding.

MR. IVY: Your Honor, if —

THE COURT: Did I understand you to say that you agree that — that the appropriate step for the Court to take at this time is to incarcerate you?

MR. IVY: Your Honor, yes, Your Honor. I see no alternative to it. I have — I have no way to pay the Court. The other side, the richest woman in the world has the money —

THE COURT: I don't want — I don't want you engaging in that kind of language in this court. I'm sick and tired of you using this inflammatory language. You're no Robin Hood, you're no Friar Tuck and I don't want to — I don't want you playing the role in this courtroom.

MR. IVY: Your Honor, I consider myself to be a Robin Hood.

THE COURT: Well, you're no Robin Hood and you're certainly no Friar Tuck. Anything else you wish to say?

. . . .

MR. IVY: . . . Your honor has the right to put me in jail for whatever time, five years if you want to. Of course, at that point some — certain rights might kick in, might become criminal. But when an attorney tries to stand up for truth and justice —

THE COURT: That doesn't have anything to do with this. We've already addressed that issue. The Court has already found that all these allegations that you've made were — were without foundation, were frivolous, without merit. If you want to take that up on appeal — but that argument is closed.

MR. IVY: It's not closed pending new evidence I assume, Your Honor.

THE COURT: It's closed until — until — until some higher court says it's not closed. I've already ruled on that, we're not going to revisit it.

MR. IVY: I am prepared to submit myself to the will of the Court for whatever they wish to do. I am without the funds to pay the contempt charge and that — I guess that's all a person can say.

You know, it is difficult for me to stand here and look around this courtroom when I realize that this courtroom — well, the renovations that the courthouse was paid for by Mrs. Walton. I mean $600,000.

THE COURT: Mr. Mr. Ivy, I am — I'm going to remand (*sic*) you. You better start addressing the issues. . . .

Now you can address the issue or you can sit down but I don't want to hear all this stuff — this Robin Hood stuff that you like to preach. That's not the issue.

MR. IVY: Yes, Your Honor. The issue is I am without funds to pay it, I do not have no way (*sic*) to raise it. I have attempted to negotiate —

THE COURT: Have you got any evidence to offer in support of your position?

MR. IVY: No, sir, Your Honor.

After a brief recess, Judge Keith issued his ruling from the bench:

THE COURT: . . . The court finds that you [Mr. Ivy] have willfully disobeyed the Court's order and orders the following: That you will be incarcerated in the Benton County Jail for a period of 36 days and that you pay the balance, what you owe, the 12,000 that the Court has ordered at the rate of $1,000 per month beginning 60 days after your release. You'll be remanded to the custody of the sheriff.

On that same day, Judge Keith signed a County Jail Order, sentencing Ivy to thirty-six days in jail. There was no reference in the County Jail Order to payment of the $12,085.27 Rule 11 sanctions. On March 13, 2002, Mr. Ivy filed his notice of appeal from the County Jail Order. On March 25, 2002, Mr. Ivy petitioned this court for a writ of *certiorari* on the basis that the trial court had exceeded its authority in sentencing him to jail and moved to stay Judge Keith's order. The motion to stay was

granted by this court on March 25, 2002, and the matter was expedited.

## I. Due Process

The first basis for Mr. Ivy's *certiorari* petition is an asserted violation of his right to due process of law, as afforded under the Arkansas and United States Constitutions.

A writ of *certiorari* is appropriate when the face of the record shows that no other remedy is available to correct a plain, manifest, and gross abuse of discretion by the trial judge. *E.g., Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000). *See also Arkansas Democrat-Gazette v. Zimmerman*, 341 Ark. 771, 20 S.W.3d 301 (2000). *Certiorari* proceedings are governed by the normal appellate rules unless the normal appellate review process would be useless, such as when the contemnor has to remain in jail during the course of the appeal. *See Johnson*, 343 Ark. at 195-196, 33 S.W.3d at 498 (holding that when contemnors were jailed indefinitely by the trial judge, an appeal to dispute the jail sentence is useless); *Bates v. McNeil*, 318 Ark. 764, 888 S.W.2d 642 (1994) (holding that when contemnor had to remain in jail pending a show-cause hearing, appeal remedy was useless). The situation here is on point with *Johnson* and *Bates*, because the thirty-six day jail-time would run but for this court's stay and expedited appeal. Mr. Ivy is correct in pursuing a writ of *certiorari*.

### a. Contempt Generally.

In order to evaluate Mr. Ivy's due process claims, it is initially necessary to identify precisely what action by Mr. Ivy was deemed to be contemptuous and what type of contempt Judge Keith invoked.

The Arkansas Constitution addresses the contempt power of the courts and the power of the General Assembly to regulate contempts not committed in front of the judge:

§ 26. Punishment of indirect contempt provided for by law.

The General Assembly shall have power to regulate the punishment of contempts not committed in the presence or hearing of the courts, or in disobedience of process.

Ark. Const. art. 7 § 26.

State law then sets out the contempt power of the courts and the appropriate penalties, with the exception of contempts committed in the immediate view and presence of the court:

(a) Every court of record shall have power to punish, as for criminal contempt, persons guilty of the following acts, and no others:

(1) Disorderly, contemptuous, or insolent behavior committed during the court's sitting in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority;

(2) Any breach of the peace, noise, or disturbance directly tending to interrupt its proceedings;

(3) Willful disobedience of any process or order lawfully issued or made by it;

(4) Resistance, willfully offered, by any person to the lawful order or process of the court; and

(5) The contumacious and unlawful refusal of any person to be sworn as a witness and, when so sworn, a similar refusal to answer any legal and proper interrogatory.

(b)(1) Punishments for contempt may be by fine or imprisonment in the jail of the county where the court may be sitting, or both, in the discretion of the court. However, the fines shall in no case exceed the sum of fifty dollars ($50.00) nor the imprisonment ten (10) days.

(2) Courts shall always have power to imprison until their adjournment.

(b)(3) When any person is committed to prison for the nonpayment of any such fine, he shall be discharged at the expiration of thirty (30) days.

(c) Contempts committed in the immediate view and presence of the court may be punished summarily. In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his defense.

(d)(1) Whenever any person is committed for a contempt under the provisions of this section, the substance of his offense shall be set forth in the order or warrant of commitment.

Ark. Code Ann. § 16-10-108 (Repl. 1999).

■ ■ Our constitution and caselaw make it clear that the courts of this state have inherent power to punish a contemnor for contempts committed in the presence of the court or in disobedience of process. Ark. Const. art. 7, § 26. *See also Johnson v. Johnson, supra; Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993); *Yarbrough v. Yarbrough*, 295 Ark. 211, 748 S.W.2d 123 (1988). This inherent power goes beyond the statutory authority provided by § 16-10-108. There is no question that willful disobedience of a valid order of a court is contemptuous behavior. Ark. Code Ann. § 16-10-108(a)(3) (Repl. 1999). *See also Hilton Hilltop v. Riviere*, 268 Ark. 532, 534, 597 S.W.2d 596, 597 (1980) ("Disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute contempt."); *Henderson v. Dudley*, 264 Ark. 697, 710, 574 S.W.2d 658, 666 (1978) ("[T]he disobedience of any valid judgment, order or decree of a court having jurisdiction to enter it is such an interference with the administration of justice as to constitute contempt."). Before a person can be held in contempt for violating a court order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *E.g., Lilly v. Earl*, 299 Ark. 103, 771 S.W.2d 277 (1989).

■ We have observed in the past that contempt is a matter between the judge and the litigant, and not between the two opposing litigants. *See Hickinbotham v. Williams*, 228 Ark. 46, 305 S.W.2d 841 (1957). *Cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (noting that contempt, Rule 11 sanctions, and award of attorneys' fees are all actions separate and apart from the underlying proceeding and that all three actions concern the integrity of the court and judicial process, not the merits of the underlying claim).

We next examine what category of contempt is involved.

*b. Criminal and Civil Contempt*

■ Contempt is divided into criminal contempt and civil contempt. *Johnson*, 343 Ark. at 197, 33 S.W.3d at 499. Criminal contempt preserves the power of the court, vindicates its dignity,

and punishes those who disobey its orders. *Johnson*, 343 Ark. at 197, 33 S.W.3d at 499. Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* This court has often noted that the line between civil and criminal contempt may blur at times. *Id.* Our Court of Appeals has given a concise description of the difference between civil and criminal contempt. *See Baggett v. State*, 15 Ark. App. 113, 116, 690 S.W.2d 362, 364 (1985) ("[C]riminal contempt *punishes* while civil contempt *coerces*." (emphasis in original)).

■ In determining whether a particular action by a judge constitutes criminal or civil contempt, the focus is on the character of relief rather than the nature of the proceeding. *Fitzhugh v. State*, 296 Ark. 137, 138, 752 S.W.2d 275, 276 (1988). Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order. *See Id.* at 139, 752 S.W.2d at 276. This is the source of the familiar saying that civil contemnors "carry the keys of their prison in their own pockets." *Id.* at 140, 752 S.W.2d at 277 (quoting *Penfield Co. v. S.E.C.*, 330 U.S. 585, 593 (1947) (quoting *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902)). Criminal contempt, by contrast, carries an unconditional penalty, and the contempt cannot be purged. *Fitzhugh*, 296 Ark. at 139, 752 S.W.2d at 276–277.

■ In the instant case, Judge Keith ruled from the bench that Mr. Ivy was to serve a fixed term of thirty-six days in jail, followed by a payment of $1,000 per month to start sixty days after the jail term ended. The County Jail Order referred only to the thirty-six days to serve. By the terms of that order, Mr. Ivy could not purge himself of the jail sentence by paying the Rule 11 sanctions. We conclude that the jail sentence was intended as a punishment, not as an inducement to pay. Hence, Mr. Ivy was clearly held in criminal contempt.

### c. Direct and Indirect Contempt

■ Both the Arkansas Constitution and the governing state statute distinguish between direct and indirect contempt. *See*

Ark. Const., art. 7, § 26; Ark. Code Ann. § 16-10-108 (Repl. 1999). *See also Allison v. DuFresne*, 340 Ark. 583, 12 S.W.3d 216 (2000); *Davis v. Meritt*, 252 Ark. 659, 480 S.W.2d 924 (1972). Direct contempt is a contemptuous act "committed within the immediate presence of the Court . . ." *Meritt*, 252 Ark. at 670, 480 S.W.2d at 930. Indirect contempt is contemptuous behavior committed outside the presence of the judge. An obvious example of direct contempt, besides open misconduct in the courtroom, is a party coming to court drunk. *See Burradell v. State*, 326 Ark. 182, 931 S.W.2d 100 (1996). Examples of indirect contempt include an attorney's failure to appear in court before receiving permission to withdraw as counsel (*Allison v. DuFresne, supra*), and failure to pay court costs (*Bates v. McNeil, supra*).

In a recent case, this court upheld a trial judge's finding that two prosecutors were in direct criminal contempt when they did not comply with a scheduling order and proceed to trial on the trial date. *See Johnson v. Johnson*, 343 Ark. 186, 33 S.W.3d 492 (2000). After the trial judge held the two prosecutors in contempt for violating his scheduling order and remanded them to the sheriff, the prosecutors petitioned this court for a writ of *certiorari*. In denying the writ, we said:

> The issue was one of proceeding to trial which the prosecutors refused to do in direct contravention of the judge's scheduling order. This occurred in front of the judge and under our statutes and under the judge's inherent authority punishment could be summarily meted out.

*Johnson*, 343 Ark. at 202, 33 S.W.3d at 502.

The *Johnson* opinion uses the language associated with direct contempt. If the failure to comply with the judge's order had been considered indirect contempt, that is, outside of the trial judge's presence, then the prosecutors would have been entitled to the due process protections of notification of the accusation and a reasonable time to make a defense. *See* Ark. Code Ann. § 16-10-108(c) (Repl. 1999).

Mr. Ivy's arguments in support of his writ all rest on the central assumption that he was held in indirect criminal contempt by Judge Keith. According to Mr. Ivy, because he was held in

indirect contempt rather than direct contempt, due process rights, such as the right to have his guilt proven beyond a reasonable doubt, the right to counsel, and the right to trial by jury, attached, and the trial judge violated those rights.

We agree that Judge Keith held Mr. Ivy in indirect contempt for willfully disobeying a prior order. When that is the case, the contemnor, as just mentioned, is entitled to notice of the accusation and a reasonable time to make a defense. Ark. Code Ann. § 16-10-108(c) (Repl. 1999). Mr. Ivy did little to invoke his due process rights before the trial court. As best we can determine, he merely made the following statement: "Your honor has the right to put me in jail for whatever time, five years if you want to. Of course, at that point—some certain rights might kick in, might become criminal. . . ."

On appeal, however, he raises specific due process deprivations for the first time—shifting the burden of proof, right to counsel, and right to a jury trial. We decline to address these specific points, because it is elementary that an issue, even a constitutional issue, must first be raised before the trial court. *E.g.,* *Green v. State*, 300 Ark. 458, 956 S.W.2d 849 (1997). Here, that was not done. Even where the requested relief is *certiorari* for a gross abuse of the trial judge's discretion, the trial court must first be presented with those rights the defendant contends were not afforded to him.

The statutory rights under § 16-10-108(c) of (1) notice of the accusation, and (2) a reasonable time to make a defense are a different matter. Mr. Ivy is an attorney. He knew of the contempt contingency as early as the Rule 11 order on January 8, 2002. He then questioned Judge Keith about possible contempt on January 25, 2002. He was then served with a notice of noncompliance with the Rule 11 order, which was mailed on February 12, 2002. He next received an Order of Summons for a show-cause hearing related to failure to comply with the Rule 11 order, which was filed on February 20, 2002. The show-cause hearing then took place on March 7, 2002. Clearly, Mr. Ivy was afforded ample notice of the accusation and reasonable time to make a defense. Moreover, he never argued to Judge Keith that

he was prejudiced by the shortness of notice or time to prepare. We hold that Mr. Ivy was not deprived of his statutory protections.

## II. Substantial Evidence

For his next argument, Mr. Ivy argues that there was insufficient evidence presented to show that his nonpayment of the Rule 11 sanction was "willful disobedience." He argues that, to the contrary, the record indicates that he tried to resolve his financial dilemma by offering to pay at a reduced rate of $500 a month. He also maintains that he advised the judge that he could not pay. Mr. Ivy asserts that Judge Keith simply concluded that he willfully disobeyed the Rule 11 order without sufficient evidence to support this finding. He also claims that the record supports the fact that the real reason he was found in contempt had to do with the merits of the underlying case. Specifically, he contends: "the trial judge was evidently frustrated with the Petitioner because of the behavior which had triggered the trial court's original decision to impose a sanction. However, the purpose of this contempt proceeding was to determine whether the Petitioner had willfully and inexcusably failed to comply with the sanction order — not to review the reasons for imposing the sanction in the first place."

What was in Judge Keith's mind, of course, is speculation on Mr. Ivy's part. Mr. Ivy, however, is correct that criminal contempt is not appropriate as a penalty for violating Rule 11. Indeed, our research has only disclosed the use of civil contempt to coerce payment of Rule 11 sanctions. *See, e.g., Verone v. Taconic Tel. Corp.*, 826 F. Supp. 632 (N.D. N.Y. 1993); *Cannon v. Loyola University of Chicago*, 676 F. Supp. 823 (E.D. Ill. 1987). The rule itself lists as "appropriate sanction[s]" reasonable expenses incurred by the litigation, including attorney's fees. *See* Ark. R. Civ. P. 11. Manifestly, the trial judge should not be allowed to do indirectly with the criminal contempt power what he could not do directly under Rule 11. We hold that Judge Keith plainly, manifestly, and grossly abused his discretion in using criminal contempt as a penalty for failure to pay the Rule 11 sanctions.

 Mr. Ivy also raises the specter of a party being jailed essentially for inability to pay a debt. The practice of imprisoning people for debts was abolished by the Debtor's Act of 1869. See Black's Law Dictionary 412 (7th Ed. 1999) (defining "Debtor's Act of 1869"). Moreover, our own constitution provides: "No person shall be imprisoned for debt in any civil action, or mense or final process, unless in cases of fraud." Ark. Const. art. 2, § 16. This court has said, in the civil contempt context, that "lack of ability to pay is a complete defense against enforcing payment from the defendant by imprisonment." *Griffith v. Griffith*, 225 Ark. 487, 490, 283 S.W.2d 340 (1955). The *Griffith* court further said: "[t]he court is empowered to punish the defendant by imprisonment for willful obstinancy where it shall appear that he had the means with which to comply with the decree, but it should not imprison him where he shows that he has not the pecuniary ability to comply with the decree and is in such ill health that he cannot earn enough money to do so." *Id.* at 491, 283 S.W.2d at 342.

Bearing this fundamental principle in mind, we are convinced, however, that Mr. Ivy received his day in court on his defense of inability to pay, albeit for criminal comtempt. As already noted in this opinion, he had ample notice of the show-cause hearing. Yet, he came to the hearing armed only with his contention that he could not pay the Rule 11 sanctions *at that time*. It is clear that Judge Keith gave Mr. Ivy every opportunity to put on evidence. At the start of the hearing on March 7, 2002, the trial court asked Mr. Ivy: "Do you have any evidence — are you prepared to offer evidence in support of your position?" Mr. Ivy responded with a long answer in which he stated "under penalty of perjury, [because] an attorney has an obligation to tell the truth in court" that (1) he had no assets except for clothes and a few personal possessions; (2) he owes the IRS about $300,000; (3) he had considered filing bankruptcy; (4) he offered, beginning March 1, to pay off the sanction at $500 a month, which he said he could afford; (5) that he could have $20,000 to $30,000 in his pocket tomorrow because of the way his income is; (6) his mother purchased all his office assets at a sale following execution on a judgment; (7) that he understood jail is the proper remedy for

nonpayment; (8) that he previously had made court ordered payments for smaller amounts; (9) that he had taken a vow of poverty when he became a minister.

During the course of the hearing, the trial judge continued to request evidence from Mr. Ivy: "Anything else you wish to say?" and "Now, you can address the issue. . . . " Just before adjourning to make his decision, the trial judge asked Mr. Ivy a final time: "Have you got any evidence to offer in support of your position?" To this, Mr. Ivy answered simply, "No, sir, Your Honor."

According to Mr. Ivy, Judge Keith should have made inquiries into whether he was indeed indigent. Yet, we see indigency as a defense to contempt and one that should have been mounted by Mr. Ivy as part of his effort to show cause why he should not be held in contempt. It was Mr. Ivy's obligation and responsibility to present evidence of his allegedly dire financial condition on March 7, 2002. He failed to do so.

Furthermore, Judge Keith, sitting as fact-finder, was still entitled to judge the credibility of this witness. In short, as the trial judge, he was not required to believe Mr. Ivy's bare assertion that he could not pay. *See Gatlin v. Gatlin,* 306 Ark. 146, 811 S.W.2d 761 (1991) (holding that a trial judge was not required to believe a contemnor's testimony that she was without funds to pay an IRS debt, and upholding a finding of contempt.)

Nevertheless, finding Mr. Ivy in criminal contempt for not paying the Rule 11 sanctions constituted a plain, manifest, and gross abuse of discretion, and we grant the writ of *certiorari.* We void the sentence of thirty-six days in jail and remand the matter for further proceedings, which may include proceedings for civil contempt if deemed appropriate by the trial court in this case. We direct that should the trial court wish to pursue civil contempt against Mr. Ivy for failure to pay the Rule 11 sanctions that a new notice and reasonable time to make a defense be afforded him under Ark. Code Ann § 16-10-108(c). At first blush, it would appear that there is little to be gained from holding still another show-cause hearing on Mr. Ivy's financial status in connection with civil contempt. By the same token, we can conceive of how

clear notice of what type of contempt Mr. Ivy might be facing under the circumstances by not paying the sanctions and the potential sentence following a finding of contempt would be important to him in fashioning his defense of inability to pay. Of course, if Mr. Ivy is indeed unable to pay the sanctions, placing him in jail to coerce him to pay as part of civil contempt would equate to holding him in criminal contempt. Because we grant the writ of *certiorari*, it is unnecessary to address Mr. Ivy's identical arguments as a direct appeal.[2]

Petition for writ of *certiorari* granted.

Remanded.

ARNOLD, C.J., not participating.

GLAZE and IMBER, JJ., concurring in part and dissenting in part.

TOM GLAZE, Justice, concurring in part and dissenting in part. I agree that Judge Keith abused his discretion in using criminal contempt as a penalty for Mr. Ivy's failure to pay Ms. Helen Walton's attorney's fees and costs as Rule 11 sanctions. However, the majority court is simply wrong in concluding that "Mr. Ivy received his day in court on his defense of inability to pay [the sanctions]." Ivy did have an abbreviated hearing on criminal contempt, but, as acknowledged in the majority opinion, the judge erred in this respect because criminal contempt is not an available remedy to enforce Rule 11 sanctions.

The majority opinion then directs that this case be remanded for further proceedings which may include civil contempt. If the majority opinion merely ended at this point, by remanding this case for further proceedings, I could agree with that part of this court's ruling, too, since it would be in accord with this court's long-established law. In other words, because this court agrees

---

[2] In response to the concurrence in part and dissent in part, it is undisputed from the record that at the time of appeal, Mr. Ivy had not paid the Rule 11 sanctions in violation of Judge Keith's order. Under these circumstances, it is proper for Judge Keith to proceed with a show-cause order for civil contempt, should he choose to do so. If Mr. Ivy has now paid the sanctions, he can so advise Judge Keith. If not, he must show cause why he should not be held in contempt.

that the circuit judge erred, the *general rule is to remand common law cases for a new trial* unless the case has been fully litigated and should be dismissed. *Hinton v. Bryant*, 232 Ark. 688, 339 Ark. 621 (1960). As indicated in *Hinton*, owing to the error indicated, the case must be retried, and upon a new trial, any deficiency of proof must be supplied. *Follett v. Jones*, 252 Ark. 950, 481 S.W.2d 713 (1972).

However, I seriously disagree with the majority when it decides that it is the *trial court's duty* to serve Mr. Ivy with a new notice, giving him a reasonable time to make a defense under Ark. Code Ann. § 16-10-108(c) (Repl. 1999). In making this statement, the majority agrees with Ms. Helen Walton's position at the prior contempt hearing that, after she filed a "Notice of Non-Compliance," alleging Mr. Ivy had failed to reimburse her, Ms. Walton had no further duty or burden in this matter. In short, the majority submits that, on remand for a civil contempt hearing, it is the *trial court's obligation* to "notice" Mr. Ivy, giving him reasonable time to prepare a defense.

First, it is all too clear that Ms. Walton may not merely file a pleading (notice or motion), alleging Mr. Ivy to be in civil contempt and claiming he has failed to reimburse her attorney's fees and costs without then requiring her later to present proof to support her claims. Stated differently, it is elementary that Ms. Walton must offer proof of Mr. Ivy's failure to pay; after doing so, Mr. Ivy must then show his inability to pay.

The majority court cites the case of *Hickinbotham v. Williams*, 228 Ark. 46, 305 S.W.2d 841 (1957), for the proposition that "contempt is a matter between the judge and the litigant, and not between the two opposing litigants." The *Williams* court, however, made this statement merely to recognize that "third parties" who were not the original plaintiffs, had been prejudiced by the defendant's (Hickinbotham's) violation of the court's injunction, and that those parties could enforce the court's order, and not just the original plaintiffs. Even in *Williams*, the "third parties," who were not the original plaintiffs, petitioned the trial court for a show cause order requiring the defendant Hickinbotham to appear and show why he should not be held in contempt; at the

hearing, those moving parties then presented testimony that Hickinbotham had violated the trial court's injunction.

Of course, in this case, no third parties or other litigants are involved. Instead, it is only Ms. Walton who charged that Mr. Ivy had not reimbursed her attorney's fees and costs as previously ordered, and it is her initial burden to prove this charge. In a proceeding for indirect contempt, like the one here, it is not proper for the trial judge to initiate his own investigation, or act on the presumption that a party (Ivy) has violated a court order and then notify the party to appear to show cause why he should not be held in civil contempt. To condone such a procedure would be nothing short of adopting an inquisitorial system whereby the judge conducts the trial, determines what questions to ask, and defines the scope and the extent of the inquiry. That is not our system.[1]

Because this case is civil in nature and the action is brought to assure Ms. Walton's attorney's fees and costs are reimbursed, she clearly has the burden to show that she has not been paid. Once Ms. Walton offers this proof and is subject to cross examination on this issue, Mr. Ivy must show his inability to pay. The proof required in a civil action for contempt is a preponderance of the evidence. *See Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992); *Dennison v. Mobley*, 257 Ark. 216, 515 S.W.2d 215 (1974).

In conclusion, I believe it is necessary to point out that some of Mr. Ivy's remarks at the scheduled hearing on March 7, 2002, bordered on contempt when he and the trial judge entered into an exchange of comments, some of which are set out in the majority opinion. If the trial judge had found Mr. Ivy in direct contempt based on disrespectful or insolent behavior, I likely would have

---

[1] In response to my opinion, the majority has added a footnote suggesting it is undisputed from the record that, at the time of the appeal, Mr. Ivy had not paid Rule 11 sanctions. Of course, no formal hearing was conducted to establish this fact, but even if such fact was true, this case on remand involves civil contempt, which is a different proceeding, and, at this time, no one knows or has alleged that Mr. Ivy has not paid any or part of Ms. Walton's attorneys fee's and costs. Again, it is not the judge's role or burden to *sua sponte* issue orders alleging noncompliance and to assume the role of a party litigant in these matters.

affirmed such a finding. By the same token, it appears that some of the unfortunate and unnecessary colloquy between the court and Mr. Ivy could have been avoided if the court had held a formal hearing by swearing in the witnesses, taking testimony, and allowing the litigants to make their arguments. Here, no witnesses were sworn, nor did they testify. Instead, the hearing was reduced to unfounded and witty remarks which resulted in a test of wills between the judge and Mr. Ivy. While this court remands this case for further proceedings, hopefully, the rules of procedure, evidence, and the law will govern and bring needed structure to a very serious matter.

For the above reasons, I concur in part and dissent in part.

IMBER, J., joins this opinion.

ARNOLD, C.J., not participating.