RITA W. GRUBER, Chief Judge *340 Jennifer and David Furr entered into a property-settlement agreement (PSA) in connection with their divorce, which occurred on May 26, 2015. Jennifer appeals from the Crawford County Circuit Court's order holding her in contempt for violating a provision of the agreement pursuant to which the parties agreed to file joint tax returns for the year 2014. She contends that the circuit court erred by finding her in contempt because (1) the court never ordered the parties to file joint tax returns; (2) David is estopped from enforcing the agreement; (3) David waived his right to enforce the provision; (4) David's conduct made it impossible for Jennifer to file joint tax returns; and (5) the parties, through their accountants, had reached an agreement to amend the PSA to file separate tax returns. We reverse the circuit court's order and dismiss the case.
The dispute in this case arose after David filed a motion for contempt against Jennifer on January 8, 2016. He alleged that she should be held in contempt "for failure and refusal to file a joint tax return as agreed between the parties in the PSA and as ordered by the Court." David also requested that the court hold Jennifer in contempt and require her to sign certain documents necessary to transfer her interest in entities belonging to him pursuant to the PSA. Jennifer replied, asking that David's motion be denied. She admitted that the PSA contained a provision requiring the parties to file joint tax returns for 2014; alleged that her accountant had made multiple, unsuccessful attempts to obtain information from David in order to file joint tax returns; and acknowledged that she had filed her returns separately after agreeing with her accountant that she had no alternative when David failed to provide the documentation necessary to file joint returns. She also stated affirmatively that the circuit court did not order either party to file tax returns either jointly or separately because "this was a contractual arrangement between the two parties." Finally, she pleaded the affirmative defenses of estoppel and impossibility of performance.
After multiple hearings, the court entered an order on March 30, 2017, holding both parties in contempt. The court stated that the parties were divorced by decree entered on May 26, 2015; the court had "considered the parties' written PSA and ordered the parties to file joint tax returns for the year 2014"; and both parties had *341 filed 2014 tax returns as married but filing separately. The court recognized that either party could have moved to enforce the PSA at any time and it would have been the court's obligation to enforce the rule of law, and it rejected all of Jennifer's defenses to enforcement of the agreement, including estoppel, waiver, impossibility of performance, and mutual agreement. The court then found each party in contempt of court and sentenced them to thirty days in the Crawford County jail, suspended pending full and complete cooperation and compliance with the order, which included obtaining an accountant to prepare joint tax returns for 2014. Jennifer filed this appeal from the court's order.
I. Contempt
Contempt is divided into criminal contempt and civil contempt. Ivy v. Keith , 351 Ark. 269, 279, 92 S.W.3d 671, 677 (2002). Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. Id. at 280, 92 S.W.3d at 677. Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. Id. Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order. Id. Because the parties in this case may free themselves by complying with the court's order, this is a case of civil contempt. Our standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. Id.
Jennifer argues that the circuit court did not have the power to enforce the parties' PSA through its contempt power because it was a private agreement and was not incorporated as part of the divorce decree. David argues that the court did incorporate the PSA as part of the decree orally in its remarks at the divorce hearing and argues that Arkansas Code Annotated section 9-12-313 (Repl. 2015) authorizes the court to enforce settlement agreements through its contempt power. We do not reach this argument because, regardless of whether the parties' PSA constitutes an order of the court, we hold that the circuit court's finding of contempt is clearly against the preponderance of the evidence in this case.
Contempt may be established when the offending party willfully disobeyed a valid order of the court. Ball v. Ball , 2014 Ark. App. 432, at 5, 439 S.W.3d 92, 94. However, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. Omni Holding & Dev. Corp. v. 3D.S.A., Inc. , 356 Ark. 440, 450, 156 S.W.3d 228, 235 (2004). Finally, if the alleged contemnor is "without the ability to comply" with the order, a court's contempt power may not be exercised. Aswell v. Aswell , 88 Ark. App. 115, 195 S.W.3d 365 (2004).
Pursuant to the parties' agreement, Jennifer provided her tax information for the year 2014 to Scott James, who had been the parties' accountant for more than a decade at the time of the divorce. Mr. James required the parties to pay a $7500 retainer, but only Jennifer paid her half. In spite of repeated requests to David and his lawyer for David's tax information, David failed to provide the information to Mr. James. Mr. James testified that Jennifer provided her tax information to him and David did not. Mr. James notified the parties in August that he would be unable to file their returns, and Jennifer hired Jimmy Hall and Gary Roberts in an attempt to have joint returns prepared and filed. Mr. Roberts testified that, when Jennifer *342 contacted their firm, she wanted to file a joint return. He said that Jennifer provided him with all of her financial information. He also testified that his firm, through the parties' attorneys, had asked David for copies of his W-2s, K-1s, and other documents necessary to file joint returns, but none of the information was ever provided. David's accountant, Joe Woosley, testified that he had David's financial information, but he was not told by David or his attorney to provide it to Jennifer or her accountants. He also testified that he was not engaged to file joint tax returns. Finally, he testified that he never spoke with Jennifer and never saw anything in writing indicating that she was not willing to file joint tax returns.
Jennifer paid the taxes owed when she filed her separate returns; David did not. Mr. James, Mr. Roberts, and Mr. Woosley testified that filing a joint return now would subject Jennifer to liability for 100% of David's unpaid tax. They all testified that the IRS does not care who owes the tax and would attempt to recover it from Jennifer.
Thus, Jennifer demonstrated that her "violation" of the provision requiring the parties to file joint tax returns was not due to willful disregard but to her inability due to David's refusal to provide the necessary information. She was without the ability to comply and thus her failure to comply did not constitute "willful disobedience of a valid order of a court." Omni Holding & Dev. Corp. , 356 Ark. at 450, 156 S.W.3d at 235. Accordingly, we hold that the court's finding of contempt was clearly against the preponderance of the evidence.
II. Estoppel
Jennifer also argues that David is estopped from enforcing this provision of the parties' PSA and that the circuit court erred in finding otherwise. The standard of review for equitable estoppel is whether the circuit court's decision is clearly erroneous. Morsy v. Deloney , 92 Ark. App. 383, 388, 214 S.W.3d 285, 288 (2005). These are the elements of equitable estoppel: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other's conduct to his detriment. King v. Powell , 85 Ark. App. 212, 148 S.W.3d 792 (2004). A party who by his acts, declarations, or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled. Sterne, Agee & Leach, Inc. v. Way , 101 Ark. App. 23, 28, 270 S.W.3d 369, 374 (2007).
We hold that the circuit court clearly erred in finding that David was not estopped to enforce this provision of the parties' agreement. First, although David had the financial information necessary to prepare and file a joint return-as evidenced by Mr. Woosley's testimony-neither David nor his attorney provided the *343 information to Jennifer, her lawyer, or either of her accountants despite numerous requests. In addition, Mr. Woosley testified that he was in possession of David's financial information but was not authorized by David to release the information to Jennifer or her accountants. David knew he had the information, and he knew that Jennifer did not. Second, although Jennifer testified that she was desperate to file joint returns, and her accountants confirmed this, David left Jennifer no choice but to file separately because she was ignorant of the facts necessary to file joint returns. Finally, Jennifer changed her position in reliance on David's conduct by filing separately. All three accountants testified that filing joint returns now would subject Jennifer to liability for 100% of David's unpaid taxes and all of the penalties he incurred for failing to pay timely. It is unclear what David's or Jennifer's specific tax obligations would have been had David provided the accountants the information to timely prepare joint tax returns as Jennifer had desired. But this lack of clarity could have been rectified by having one of the accountants prepare timely joint returns, as Jennifer attempted to accomplish. David, by his failure to act or speak under circumstances in which he should have done so, either with design or willful disregard of others, induced or misled another to conduct or dealings which he or she would not have entered upon, but for such misleading influence, and he will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled. See Sterne, Agee & Leach, Inc. , 101 Ark. App. at 28, 270 S.W.3d at 374.
Reversed and dismissed.