Cite as 2020 Ark. App. 189

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-19-625

|  |  |  |
|---|---|---|
| CHARLES SYMANIETZ | | Opinion Delivered March 18, 2020 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04DR-18-129] |
| V. | | |
| DEBORAH SYMANIETZ | | HONORABLE DOUG SCHRANTZ, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BRANDON J. HARRISON, Judge

Charles Symanietz appeals the decree that finalized his divorce from Deborah Symanietz and the orders of contempt entered against him. He argues that the circuit court erred in the amount of child support awarded, awarding alimony to Deborah, not honoring the parties' mediation agreement, and holding him in contempt. We affirm the circuit court's orders.

The parties married in 1991 and separated in September 2017. After a divorce hearing in November 2018, the circuit court expressed doubt about Charles's testimony that Deborah had mismanaged the family trucking business, Symanietz Enterprises, because Charles had remained agreeable to Deborah's running the business throughout the course of their marriage. The court also found that

> [b]ased on the evidence that I've seen here, this was a struggle to make ends meet, largely because Mr. Symanietz chose not to drive from time to time. . . . [I]t has been obvious that Mr. Symanietz works at this business when he

chooses to, and when the trouble came, for whatever reason, between these two, he chose not to do so so regularly.

> I based child support in the temporary hearing based upon representations made to the Court at the time about income and so forth; and, frankly, I found those, as I reviewed this today, to be certainly within reason of what Mr. Symanietz is capable of earning.

> . . . .

> [I]n light of the earning capacity that the Court perceives for Mr. Symanietz, it's much greater than the potential for Ms. Symanietz. I don't see her having the ability to go out and drive [a] truck or to broker or to dispatch anywhere near and earn anywhere near the money that Mr. Symanietz is capable of. So for that reason, even though their education and other factors may be similar, the earning capacity is just not the same.

> . . . .

> I am convinced, based on the IRS records and the work records that have been provided in the course today, that Mr. Symanietz is very capable of earning a minimum of $3400 a month if he applies himself at this trucking business, and I impute that income to him and set child support at $800 per month.

The court also found that it was not bound by a purported mediation agreement between the parties that agreed on the disposal of some real property; that agreement was not entered into evidence and did not address the parties' debt or personal property.

The divorce decree, filed on 22 January 2019, established that Deborah would have custody of the parties' two minor children and that she also cared for the parties' adult daughter. The order recited the child-support obligation as explained above, found Charles in contempt for nonpayment of previously ordered child support, and ordered Charles to pay $160 a month until his child-support arrearage of $3,500 had been paid in full. In addition, the court ordered that Charles pay $100 a month in alimony if Deborah was receiving $2,000 a month or more in income from Symanietz Enterprises. However, "if

2

she does not voluntarily terminate her employment but ceases receiving that amount of income from Symanietz Enterprises, then [Charles's] alimony obligation shall increase to $2,000.00 [a] month, for a period of two years." Charles filed a timely notice of appeal from the divorce decree.

Less than two months after the divorce decree was entered, Deborah moved for contempt and asserted that Charles had failed to pay child support, child-support arrearages, and costs and attorney's fees as ordered. After a hearing on 29 May 2019, Charles was held in direct criminal contempt of court and sentenced to ten days in the Benton County jail. In a separate order filed 5 June 2019, the court found Charles in willful contempt of the court's order from the divorce decree and ordered that he be incarcerated for fourteen days in the Benton County jail, to run consecutively to the previous ten-day sentence. The circuit court entered a total judgment of $15,000 for unpaid spousal support and attorney's fees and found that Charles could "purge himself of the 14-day sentence for Contempt by paying this amount to the Plaintiff." Charles filed an amended notice of appeal from both contempt orders on 8 July 2019.

I. *Child Support*

For his first point on appeal, Charles asserts that the circuit court erred in its calculation of child support. Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* As a

3

rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id.* However, a circuit court's conclusion of law is given no deference on appeal. *Id.*

In determining an appropriate amount of child support, courts are to refer to the family support chart contained in Administrative Order No. 10, which provides a means of calculating child support based on the payor's net income. *Cowell v. Long*, 2013 Ark. App. 311. Arkansas Supreme Court Administrative Order No. 10(III)(c) provides that for self-employed payors, the circuit court should first consider the payor's tax returns, specifically the last two years' federal and state income tax returns. *See also Tucker v. Office of Child Support Enforcement*, 368 Ark. 481, 247 S.W.3d 485 (2007). Section (III)(c) also dictates that the circuit court "shall consider the amount the payor is capable of earning or a net worth approach based on property, life-style, etc." Arkansas Supreme Court Administrative Order No. 10(III)(d) provides that "[i]f a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style."

Charles first asserts that the circuit court failed to follow the proper procedure in determining his income. He claims that the circuit court was required to consider his tax returns for the prior two years before it could impute any income to him and that it had to make a written finding explaining why imputation of income was necessary. The 2016 and 2017 tax returns show an income of $34,166 and $32,746, respectively, and Charles

4

contends that the circuit court should have based the child-support order based on those figures.

What Charles's argument fails to recognize is that the circuit court was not limited to his tax returns; under section (III)(c), the court "shall consider the amount the payor is capable of earning," and under section (III)(d), the court "may attribute income to a payor up to his or her earning capacity." The circuit court found that Charles chose not to work as much as he could, i.e., was working below his full earning capacity, and therefore imputed an income that the circuit court deemed reasonable. There was no error in this procedure.

Secondly, Charles contends that the circuit court erred in imputing income because his income had not been reduced "as a matter of choice and without reasonable cause." He argues that Deborah stopped working for the family business in the face of divorce proceedings and that she took business funds for personal use, and he implies that this is what caused his decline in income. He also asserts that the circuit court assessed him with an imputed income beyond his earning capacity because he had no functioning vehicle, no dispatcher, and no funds to pay for either.

The circuit court heard testimony from both parties on the state of their finances and the reasons behind them, and we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Hall*, *supra*. Thus, we hold that the court did not clearly err in imputing Charles's income.

## II. *Spousal Support*

A circuit court's decision regarding alimony is a matter that lies within its sound discretion and will not be reversed on appeal absent an abuse of that discretion. *Carr v. Carr*,

2019 Ark. App. 513, 588 S.W.3d 821. An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.* The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Id.*

The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties in light of the particular facts of each case. *Nauman v. Nauman*, 2018 Ark. App. 114, 542 S.W.3d 212. The primary factors are the financial need of one spouse and the other spouse's ability to pay, but other factors are the circumstances of the parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Williams v. Williams*, 2018 Ark. App. 79, 541 S.W.3d 477. There is no mathematical formula or bright-line rule in awarding alimony because the need for flexibility outweighs the need for relative certainty. *Nauman*, *supra*. If alimony is awarded, it should be an amount that is reasonable under all the circumstances. *Williams*, *supra*.

To reiterate, the circuit court ordered that Charles pay $100 a month in alimony if Deborah was receiving $2,000 a month or more in income from Symanietz Enterprises, but if she ceased receiving that amount from the business and did not voluntarily terminate her

6

employment, Charles's obligation would increase to $2,000 a month. This alimony obligation was for two years.

Charles argues that Deborah has no motivation or incentive to work on the business, that Deborah could work but chooses not to, and that $2,000 is more than half of his imputed income. Thus, he contends, the circuit court abused its discretion in awarding alimony.

Charles's argument is essentially based on speculation; Deborah testified that she was willing to continue working for Symanietz Enterprises but that she would seek other employment, preferably in the trucking industry, if that business did not continue to operate. Charles also does not contest the circuit court's finding that his earning potential is higher than Deborah's. We hold that the circuit court did not abuse its discretion in ordering rehabilitative alimony.

### III. *Mediation Agreement*

For his third point, Charles argues that the circuit court erred in refusing to consider the parties' mediation agreement. In domestic-relations cases, we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake. *Id.* In reviewing a circuit court's findings of fact, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Fletcher v. Stewart*, 2015 Ark. App. 105, 456 S.W.3d 378.

Charles claims that it was "undisputed" that the mediation agreement "fully addressed" the parties' real estate. He states that as part of the agreement, the parties had agreed that the real estate would sell for no less than $200,000, but under the court's order, there is no minimum bid for the real estate at a commissioner's sale, so it will operate as a loss to both parties.

Charles does not dispute or even address the fact that the agreement was not entered into evidence at the hearing. The only evidence before the circuit court was testimony from Deborah referring to two pieces of property (a "lakefront" property and the Avoca property) and a colloquy wherein counsel appeared to be confused about whether the mediation agreement covered two or four parcels of real estate. We hold that the circuit court did not clearly err in disregarding an agreement that was not entered into evidence and that had unclear terms based on the evidence presented at the hearing.

## IV. *Contempt*

In order to establish contempt, there must be willful disobedience of a valid order of a court. S*ee Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002). Contempt is a matter between the court and the litigant and not between the two opposing litigants. *Id*. Before one can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Id*.

Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). The standard of review for civil

8

contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Id.*

Charles first asserts that the circuit court erred in finding him in contempt for nonpayment of previously ordered child support. In a temporary ex parte order entered on 25 January 2018, the circuit court ordered Charles to pay $199 a week in child support and set a hearing for February 7. The record reflects that no hearing was held on that date, however, and the circuit court did not convene a hearing until July 18.

According to Charles's testimony at that hearing, he was made aware of the child-support obligation sometime in April. He indicated that he had been paying $500 a month and not the $800 a month as ordered. At the divorce hearing, Charles testified that he had paid $600 or $700 some months. When asked why he should not be held in contempt for nonpayment, Charles answered, "I've got zero money in my wallet. . . . $2,000 a month doesn't go very far when Debbie's averaging over 600 . . . dollars in support." Going forward, Charles thought he could maintain a $500-a-week income. He also clarified that he had been paying some child support since January, before he knew there was an order in place.

As explained above, the circuit court found Charles in contempt for failure to pay child support in the divorce decree and that he owed $3,500 in arrearage. As a sanction, the court ordered him to pay $935 to Deborah within sixty days of the order and to pay $160 a month in addition to his child-support obligation of $800 a month until his arrearage was paid. This is a matter of civil contempt, as its aim is to protect the rights of private

9

parties by compelling compliance with orders of the court made for the benefit of private parties.

On appeal, Charles argues that the circuit court erred because he had not "willfully" failed to pay child support from the time the temporary order was entered in January to when he was made aware of the order in April. He also asserts that based on his actual income, not the income imputed by the court, he cannot afford to pay that sum of child support, and that his payments had averaged over $600 a month, which is consistent with what his child-support obligation would be based on his income of $500 a week.

As we are affirming the imputed-income amount, we also affirm the court's finding of contempt for nonpayment of child support, especially since the circuit court did consider the amounts that Charles has paid in determining the arrearage amount. The circuit court's decision was not clearly against the preponderance of the evidence.

Second, Charles argues that the circuit court erred in finding him in contempt for failing to pay alimony as ordered. The contempt order was filed on 5 June 2019, making a notice of appeal from that order due on July 5; however, Charles did not file an amended notice of appeal to include this order until July 8. Pursuant to Ark. R. App. P.–Civ. 4(a) (2019), "a notice of appeal shall be filed within thirty (30) days from the entry of the judgment, decree or order appealed from." The failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *See Harold Ives Trucking Co. v. Pro Transp., Inc.*, 341 Ark. 735, 19 S.W.3d 600 (2000). Thus, we hold that this argument is not properly before us.

Affirmed.

GRUBER, C.J., and WHITEAKER, J., agree.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya*, for appellant.

One brief only.