Louis ETOCH *v.* STATE of Arkansas

97-627                                                          964 S.W.2d 798

Supreme Court of Arkansas
Opinion delivered March 5, 1998

*Louis A. Etoch* and *Edward W. Chandler*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. This case presents a question regarding the discipline of attorneys-at-law. The primary issue on appeal arises from the Monroe County Circuit Court's order holding Louis Etoch in contempt of court and fining him $250.00. First, Etoch challenges this contempt order. Second, Etoch contends that the trial court erroneously prompted the State to move for a mistrial. Third, Etoch contests the trial court's charging him $780.00 in juror fees after granting the State's motion for mistrial. Finding no merit in appellant's arguments, we affirm the trial court's contempt order and its order assessing defense counsel juror fees.

Attorneys Louis Etoch and Edward Chandler represented Kimberly Whitaker in criminal charges relating to the death of Jamison Williams. Whitaker was initially charged as an accomplice to capital murder, but the charges were later reduced to accomplice to first-degree murder. During her trial before the Monroe County Circuit Court, which preceded Devrick "Dee" Meachum's trial for the capital murder of Jamison, Whitaker's

defense attorneys suggested that if Whitaker was an accomplice to Meachum, Meachum was acting in self-defense.

In furtherance of its theory, defense counsel Etoch attempted to elicit certain testimony from the State's first witness, Detective Tim Prestwood, the police officer in charge of the Jamison murder investigation. Prior to trial the State and defense counsel had agreed to stipulate to an autopsy report prepared by the state medical examiner. The medical examiner's report included the following notation: "Recovered loosely on the right testicle a plastic bag containing multiple gray-white crystalline, irregular, drug-like material."

Subsequently, the State filed a motion in limine requesting that the language, regarding what was determined to be 1.7 grams of crack cocaine, be struck from the medical examiner's report. Defense counsel objected to the exclusion, arguing that the evidence was relevant to their theory of the case, particularly that the language demonstrated evidence of the victim's violent character. Specifically, the defense contended that the evidence was relevant to the issue of who was the aggressor and whether or not the accused, Whitaker, reasonably believed she was in danger of suffering unlawful deadly physical force. After hearing counsels' arguments, Judge L.T. Simes, II, held that the language regarding the drugs "does not come in" and that the defendant, Whitaker, could not have known at the time of the killing that Jamison had 1.7 grams of cocaine on his right testicle.

During the State's direct examination of Detective Prestwood, Prestwood testified that his investigation indicated that the victim was entering Ned's Café at the time of the shooting and that he had been shot from behind. On cross-examination, Etoch attempted to impeach Detective Prestwood's statement by asking the following question:

> You know Jamison Williams could not enter Ned's Café because of those pictures right there (indicating). Ned does not allow anyone in his café who had drugs on them, and Jamison had 1.7 grams of crack on him when he died, didn't he?

Etoch was referring to a sign by the front door of Ned's Café that stated, "You cannot bring liquor or drugs inside" and the medical

examiner's discovery of the 1.7 grams of crack cocaine on the victim's testicle.

Following the State's objection to Etoch's question, Judge Simes moved the discussion to his chambers, outside the presence of the jury. After allowing the attorneys an opportunity to respond on the record, Judge Simes recalled his ruling on the State's motion in limine. He reiterated that he had examined the Arkansas Supreme Court rules and had advised the parties that he believed the stricken language to be extremely prejudicial. He advised the attorneys that he had ruled on the issue and now found that Etoch had disregarded that ruling.

Moreover, Judge Simes concluded that Etoch's conduct was deliberate with respect to how the question was phrased, particularly in his reference to the items of cocaine. Judge Simes deduced that there was no misunderstanding about his ruling but that defense counsel disagreed with the court's ruling and strategically decided to proceed. Judge Simes also noted that defense counsel did not seek further instructions from the court but specifically went into an area specifically prohibited. Accordingly, the trial judge found Etoch in contempt of court for intentionally disregarding the court's order and fined him $250.00.

■ ■ Where fines were imposed, as here, and the punishment could not be avoided by an affirmative act, the case is one of criminal contempt. The standard of review in a case of criminal contempt requires this Court to view the record in the light most favorable to the trial judge's decision and to sustain that decision if it is supported by substantial evidence and reasonable inferences. *Hodges v. Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995). If an act interferes with the order of the court's business or proceedings or reflects upon the court's integrity, that act is deemed contemptuous. A court's contempt power may be wielded to preserve the court's power and dignity, to punish disobedience of the court's orders, and to preserve and enforce the parties' rights. Moreover, while an attorney may make a proper objection to a court's ruling, once made, the attorney should abide by that ruling so long as it remains in effect. An attorney should not engage in conduct that offends the dignity of the court. *Hodges*, 321 Ark. at 14.

■ Significantly, where the failure or refusal to abide by a court's order is the issue, this Court does not look behind the order to determine whether the order is valid. *Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993). In *Carle*, the appellant argued that his constitutional and statutory rights were impinged because the judge conducting the contempt proceedings refused to consider, in defense of the appellant's contempt charge, that the trial court abused its discretion in ordering appellant to proceed to trial. Responding to the appellee's contention that the judge had made a finding that the trial court had not abused its discretion, this Court noted the long-settled law that we do not look at the validity of the underlying order. *Carle*, 311 Ark. at 480.

■ This Court's decision in *Carle* recalled an earlier decision in *Meeks v. State*, 80 Ark. 579, 98 S.W. 378 (1906), where we upheld a contempt order and refused to review the underlying order. In *Meeks*, we declared that the fact that a decree was erroneous would not excuse disobedience on the part of those bound by its terms until the order was reversed. *Meeks*, 80 Ark. at 582. The United States Supreme Court agreed with this principle in *United States v. Rylander*, 460 U.S. 752 (1983), when it stated:

> It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience.

*Rylander*, 460 U.S. at 756-57 (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)).

■ Notably, there are exceptions to this general rule. If the contemnor was making a legitimate and successful challenge to the validity of the order, we may look beneath the order and recognize substantive error as a defense to contempt. *See Carle*, 311 Ark. at 481-82. However, where the contemnor merely refused to comply with an order that was clearly within the court's jurisdiction and power, we will not look behind that order. *Id.* at 482.

A court order must be in definite, express terms, rather than implied, before a person may be held in contempt for violation of that order. *Hodges*, 321 Ark. at 17. Here, the trial court thoroughly visited, during the pre-trial discussion of the State's motion in limine, the issue of the exclusion of the language regarding the crack cocaine. Again, at the time of the State's objection to Etoch's cross-examination of Detective Prestwood, the trial judge discussed in chambers his prior ruling and gave each party time to respond on the record before reiterating his ruling. The trial judge believed his order was clear and that Etoch deliberately disobeyed that order.

Viewing the record in the light most favorable to the trial judge, there is substantial evidence in the case at bar to support the holding of contempt when Judge Simes clearly instructed Etoch that the language from the state medical examiner's report regarding the crack cocaine "does not come in" because he believed it was extremely prejudicial and that the defendant, Whitaker, had no knowledge that the drugs were on the victim's person. In clear defiance of that order, Etoch proceeded to use the exact language during his cross-examination of Detective Prestwood. Accordingly, we find that the trial court did not err in holding Etoch in contempt and in fining him $250.00.

Etoch also assigns as error the trial judge's comments made prior to the State's motion for mistrial. Specifically, Judge Simes remarked, "I think you all are getting too involved in the defense of your case and making speculations and innuendoes before the jury. The prosecution has not asked for a mistrial, but I want you to know that I think I might grant one anyway." Etoch argues that, in this manner, the trial court improperly prompted the State to move for a mistrial. However, Etoch lacks standing to raise this particular issue on appeal because he fails to explain how the trial court's ruling granting the State's motion for mistrial adversely impacted him, a necessary perquisite to standing. *See Goodwin v. Harrison*, 300 Ark. 474, 483, 780 S.W.2d 518 (1989). Neither does Etoch cite authority or make a convincing argument in support of his position, urging this Court to vicariously review the merits of the trial court's order in the absence of the defendant as the real party in interest. Etoch merely asserts that the trial

court erred by prompting the State's motion for mistrial over the defendant's objection, and he fails to demonstrate his personal stake in the outcome of the controversy. Accordingly, we decline to address appellant's second point on appeal. *See Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996).

In any event, the trial court's order granting the State's motion for mistrial cited Etoch's deliberate violation of the court's ruling regarding the crack cocaine reference and his continued improper comments and characterizations about testimony and evidence, in spite of the court's rulings sustaining the State's objections. Furthermore, the trial court found that Etoch's responses to the State's objections were not posed as legal arguments but constituted attempts to present the jury with objectionable and inadmissible information. The trial judge considered that the cumulative effect on the jury of defense counsels' misconduct tainted the jury and deprived the State of a fair trial.

At the close of its order granting the State's motion for mistrial, the trial judge concluded that the mistrial was a result of defense misconduct and assessed defense attorneys the costs of the trial, namely, juror fees in the amount of $780.00. In his third point on appeal, Etoch contends that this assessment constitutes error. However, Etoch fails to offer any authority or convincing arguments in support of his assertion, and it is not apparent without further research that his argument is well taken. Accordingly, we will not consider this point on appeal. *See Williams,* at 325 Ark.

In conclusion, we affirm the trial court's contempt order, $250.00 fine, and its order assessing defense counsel juror fees in the amount of $780.00.