Michael ALLISON *v.* David Kelly DuFRESNE

99-1224                                      12 S.W.3d 216

Supreme Court of Arkansas
Opinion delivered March 9, 2000

*Jeanne L. Denniston*, for appellant.

No response.

TOM GLAZE, Justice. Appellant Michael L. Allison is an attorney who represented Dottie (DuFresne) Moore in a change-in-custody proceeding which was initiated by Moore's former husband, David DuFresne. On the date the custody case was set for hearing, Allison did not appear. The chancellor summarily held him in contempt and fined him for failing to obtain the court's permission to withdraw as Moore's counsel. Allison seeks reversal of the court's ruling solely on the basis that, because the court's action was in the nature of imposing criminal contempt, Allison was first entitled to notice and a show-cause hearing.

To reach Allison's argument, we need to review the relevant events leading to his being held in contempt. On February 11, 1999, David DuFresne filed his action, seeking custody of his and Moore's child. Moore engaged Allison as counsel to represent her. Allison filed a response on Moore's behalf denying DuFresne's allegations, and DuFresne's attorney then obtained a June 16, 1999, trial setting. The abstract of record next reflects that, on June 11, 1999, Allison filed a motion to be relieved as Moore's attorney, asserting he had not been paid a fee. Allison further alleged that, on April 7, 1999, he had notified Moore of the June 16, 1999, setting. He also averred that on June 9, 1999, he had attempted to serve Moore with a copy of his motion to be relieved as counsel. The postal service receipt showed Moore had received Allison's motion on Monday, June 14, 1999. Moore apparently tried to engage other counsel, Allen Waters, on the evening of June 14, but Waters said that he could only agree to represent Moore if a continuance of the June 16 trial could be obtained.

On the day of the Wednesday, June 16 hearing, Moore appeared with Waters, who explained to the chancellor that he was only recently engaged, and would need a continuance if he was to enter an appearance and represent Moore. The chancellor asked of Allison's whereabouts since he had not been relieved as Moore's attorney. The chancellor said that she had talked to Allison and DuFresne's counsel on June 11 and 14, and told them if they wanted a hearing on Allison's motion to be relieved as counsel, they should set up a conference call. No such call was arranged. In view of these events and Allison's failure to appear on June 16, the chancellor found Allison in contempt, fined him $250.00, and reported him to the Professional Conduct Committee.

■■ It is settled law that an act is contemptuous if it interferes with the order of the court's business or proceedings or reflects upon the court's integrity. *Hodges v. Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995); *Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 11 (1993). Our court has also made it clear that Rule 64(b) of the Arkansas Rules of Civil Procedure provides a lawyer may not withdraw from any proceeding or from representation of any party to a proceeding without permission of the court in which the proceeding is pend-

ing. *Dean v. Williams*, 339 Ark. 439, 6 S.W.3d 89 (1999).[1] Significantly, our court has further held that, in these attorney-withdrawal matters, the trial court must play an active role in determining whether the requirements of Rule 64(b) have been met. *Id.* This rule is aimed at protecting the client's interests, and the trial court must look at a motion to withdraw from the point of view of the client, not the attorney. *Id.*

■ While it is clearly an attorney's burden to comply with the established principles above, a trial court cannot summarily impose criminal contempt and penalties for violating those principles unless such contemptuous acts are committed in the immediate view and presence of the court. *See* Ark. Code Ann. § 16-10-108(c) (Repl. 1999). In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his defense. *Id.* These statutory requirements are consistent with our case law where this court has held that criminal penalties may not be imposed on an alleged contemner who has not been afforded the protections that the constitution requires of criminal proceedings. *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988). The *Fitzhugh* court held the following: "The Due Process Clause, as applied in criminal proceedings, requires that an alleged contemner be notified that a charge of contempt is pending against him and be informed of the specific nature of that charge." *Id.* at 140, 752 S.W.2d at 277. Before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties imposed, and the command must be express rather than implied. *Arkansas Dept. of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998).

■ There are some jurisdictions which have held that, where counsel fails to appear when his case has been called, his absence has occurred "in the presence of the court" and constitutes a direct contempt. *See* 17 Am. Jur. 2d *Contempt* § 28 (1990); John E. Theuman, Annotation, *Attorney's Failure to Attend Court, or Tardi-*

---

[1] Permission to withdraw may be granted for good cause shown if counsel seeking permission presents a motion therefore to the court showing he (1) has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel; (2) has delivered or stands ready to tender to the client all papers and property to which the client is entitled; and (3) has refunded any unearned fee or part of a fee paid in advance, or stands ready to tender such a refund upon being permitted to withdraw.

*ness, as Contempt*, 13 A.L.R. 4th 122, at § 9 (Supp. 1999). However, the greater weight of authority appears to hold that, although the absence of an attorney from a trial may constitute contempt, it occurs outside of presence of court and thus is indirect contempt which may not be summarily punished. *Id.*, 13 A.L.R. 4th 122, at § 10. This overriding general principle is consistent with Arkansas's statutory and case law on this subject as discussed above, which requires that the alleged contemner be informed of the specific nature of the trial court's charge.

■ In fairness to the trial court here, it made an unsuccessful effort to contact attorney Allison by directing opposing counsel to find Allison to ask him to attend court, but these efforts by the court also show it was attempting to gather reasons why Allison had failed to show at the June 16 hearing — information the trial court could only acquire through holding a hearing. In this case, the chancellor apparently made no mention of Rule 64(b), nor did she *order* Allison to arrange a telephone conference or schedule a hearing regarding his motion to be relieved as Moore's counsel. In this respect, we point out that our court has held counsel to be in direct contempt of court for his failure to appear as scheduled *pursuant to a show-cause order*. *See Streett v. State*, 331 Ark. 139, 959 S.W.2d 744 (1998).[2] Here, however, there was no order, so the result is different.

■ In the instant case, Allison's acts, or failures to act, cannot be said to have taken place in the immediate view and presence of the court. Allison suggests that, if given the notice and opportunity, he could have offered a meritorious defense that he was not in contempt. That, of course, is yet to be shown or decided, and nothing we have said should be taken to mean that there is no

---

[2] We are aware of the court of appeals' case of *Arkansas Department of Human Services v. Gruber*, 39 Ark. App. 112, 839 S.W.2d 543 (1992), where DHS was held in contempt and assessed a fine when it failed to appear at a placement hearing in juvenile court. It appears there that the trial court found DHS summarily in contempt for failing to appear as ordered, but the court of appeals reversed because DHS was deprived of procedural due process because no notice of the contempt was given to DHS; the case was remanded so the chancellor could conduct a show-cause hearing. Thus, the court of appeals has held that, even though the alleged contemner was ordered to appear and did not, DHS was still entitled to a hearing before being found in contempt. We need not determine whether the *Gruber* decision is correct because here the trial court issued no order for Allison to appear, which is a fact that is significant when determining whether an attorney or party can be summarily punished for his or her absence.

evidence to support a finding of contempt. We reverse only because this criminal contempt proceeding involved indirect contempt which requires that Allison be given a show-cause hearing. We must reverse and remand so the chancellor can afford him such a hearing.