Phillip ,T. Whiteaker, Judge, Dissenting. I respectfully dissent from the majority opinion. Appellant Calvin Carrick’s appeal is taken from an order finding him in | ] (¡criminal contempt. That order, therefore, should be the proper focus of this appeal. Carrick’s sole argument on appeal is that the circuit court did not have the authority to hold him in contempt because the court’s actions deprived him of his Sixth Amendment right to represent himself. Because I believe the circuit court in this case had the authority to find Carrick in contempt, and issued a clear order that was then flagrantly disobeyed, I would affirm the circuit court’s contempt citation against Carrick. Because Carrick challenges the authority of the court to find him in criminal contempt, I begin by taking a look at the law regarding a court’s authority in this regard. Under Arkansas Code Annotated section 16-10-108(a)(l) (Repl. 2010), every court of record shall have power to punish, as for criminal contempt, persons guilty of “[disorderly, ■ contemptuous, or insolent behavior committed during the court’s sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority.” (Emphasis added.) Likewise, under Arkansas Code Annotated section 16-10-108(a)(3), every, court of record shall have power to punish, as for criminal contempt, persons, guilty of “willful disobedience of any process or order lawfully issued or made by it.” Further, under Arkansas Code Annotated section 16-10-108(c), a court has the authority to summarily punish contemptuous acts committed in the immediate view and presence of the court. There is a legitimate and logical reason for these legal principles: criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. Stilley v. Univ. of Ark. at Fort Smith, 374 Ark. 248, 287 S.W.3d 544 (2008). Clearly, the circuit court held the authority to punish contemptuous behavior |17committed in its presence, held the authority to punish willful disobedience of a lawful order, and held the authority to do so summarily. Despite these principles, Carrick argues that the court did not have such authority. Essentially, he argues that (1) he has a Sixth Amendment right to represent himself, (2) all he was doing was asserting this right, and (3) the court found him in contempt for asserting his constitutional right. While he frames these arguments as a challenge to the court’s authority, in reality they are a challenge to the correctness of the court’s rulings. Carrick mistakenly equates authority with correctness. A challenge to the authority of a court to act and a challenge to the correctness of a court’s ruling are not the same- thing. When the two are mistakenly conflated, it leads to a misapplication of our standard of review, which is what I believe the'majority opinion has done. ' ; ■ ' The standard of review in a case' of criminal'contempt is well settled: an appellate court views the record in the light most favorable to the trial judge’s decision and sustains that decision if it is supported by substantial evidence. Conlee v. Conlee, 370 Ark. 89, 257 S.W.3d 543 (2007). Substantial evidence is evidence of a sufficient force and character to compel a conclusion one way or the other, forcing the mind to pass beyond suspicion or conjecture. James v. Pulaski Cty. Circuit Court, 2014 Ark. 305, 439 S.W.3d 19; Witherspoon v. State, 322 Ark. 376, 909 S.W.2d 314 (1995). Wfliere a person is held in contempt for failure or refusal to abide by a judge’s order, the reviewing court will not look behind the order to' determine whether it is valid. James, supra. The majority accurately recites the standard of review and.the general rule that we will not look behind an order to determine whether it is valid. The majority goes on,. however, |1sto avoid the general rule by attempting to apply an exception. The majority devotes considerable time to examining the application of Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), in the context of Car-rick’s case. The cases on which the majority relies, however, address violations of. a defendant’s right to self-representation in the context of a direct appeal from the denial of that right. See Johnson v. State, 2015 Ark. App. 677, 476 S.W.3d 807; Barnes v. State, 258 Ark. 565, 528 S.W.2d 370 (1975). Neither of those cases presented the issue that is before us in this appeal: whether a defendant may be held in contempt for refusing to abide by a directive of the circuit court. Admittedly, almost every general rule has an exception, including our general rule that wé will not look behind an order to determine whether it is valid. Our supreme court, has noted that, if a contemnor was making a legitimate and successful challenge to the validity of the order, the appellate court may look beneath the order and recognize substantive error as a defense to contempt. See Etoch v. State, 332 Ark. 83, 88, 964 S.W.2d 798, 801 (1998). “However,' where the contemnor merely refused to comply with an order that was clearly within the court’s jurisdiction and power, we will not look behind that order.” Id. (émphasis added). As an example of an appellate court looking behind and reversing a trial court’s contempt order, the majority opinion cites to Notion v. Taylor, 299 Ark. 218, 772 S.W.2d 316 (1989). In Norton, the court found an attorney in contempt for disobeying an order to represent a nonindigent defendant. The supreme court reversed the contempt, holding that the court lacked authority to issue the order. I believe that the exception set forth applies only to cases where the challenge is to the [^authority or jurisdiction of the court to enter the order and does not apply to matters, such as that presented herein, where the challenge is to the correctness of the court’s ruling. Here, the court clearly had the authority to preside over criminal matters. Within that capacity, the court had the authority to make a determination concerning Carrick’s Sixth Amendment right to represent himself or the termination of that right.[13] Likewise, the court had the authority to make determinations concerning Carrick’s indigency and whether he qualified for the appointment of counsel. Further, the court had the authority to control its- docket by directing Carrick to return, to court with counsel. Because the court acted within its authority, the exception does not apply; and I disagree with the, majority’s decision to do so. Applying the correct standard of review, the record viewed in the light most favorable to the circuit court’s decision shows the following events. Carrick appealed his district court conviction to the Pulaski County Circuit Court and requested a jury trial. On the day of trial, Carrick advised the court that he intended to represent himself. The court conducted an inquiry under Faretta, supra, and found that Car-rick had knowingly and voluntarily waived his right to counsel. Before trial began, however, Carrick and the court became embroiled in a discussion over jury instructions. During that discussion, the court observed that Carrick did not appear to understand the concept of an affirmative defense or the fact that it- was Carrick’s burden to Improve such a defense. Carrick advised the court, “Sir, I think I will need a lawyer ... because I don’t understand what’s going on.” The court agreed and accepted Carrick’s revocation of his right to self-representation. The court dismissed the jury and directed Carrick to return on December 4, 2014, with counsel.[14] On December 4, 2014, Carrick returned to court as directed but without counsel. Carrick attempted to reassert his right to self-representation. The court denied this attempt, stating that it was “not going down that road again,” but' the court instructed Carrick to visit with the public defender concerning his qualifications for appointment 'of counsel. The public defender later informed'the court that Car-rick refused to sign the affidavit of indi-gency because-he felt that he could afford an attorney. The court then directed Car-rick to return on December 11, 2014, with an attorney. - - - On December 11, Carrick appeared once more without an attorney: Despite the court’s previous ruling concerning self-representation, Carrick told the court that he was representing himself. The court stated, “No, you’re not. We plowed that field and you are incompetent to represent yourself and therefore, you will not represent yourself.” The court again directed Carrick to talk with the public defender to determine whether he qualified for the public defender’s services. At this point, Carrifek wanted to argue with the court to the point that the court cautioned him, “Do not [interrupt] me, Mr. Carrick, when I’m talking. I will not tell you this one other time.” Once more, Garrick refused to complete the affidavit |21of indigency; Carrick told the- court that- he would not fill out a form saying that he was “requesting” a lawyer, because he was not requesting a lawyer; the court agreed to amend the form so that it did not use the language to which Carrick objected but would instead merely recite that the court was appointing counsel for Carrick. Ultimately, the court had to inquire, on the record, whether Carrick had sufficient funds to hire an attorney. Carrick initially balked at answering the court’s questions, attempting to invoke a Fifth Amendment right against self-incrimination. Carrick eventually -informed the court that he owned his home and several automobiles outright, had no dependents, and had several tens of thousands of dollars on deposit in various banks. ■■ The court found that Carrick did not qualify for the services of a public defender. I believe that, on the facts set out above, substantial evidence supports the court’s finding that Carrick was in contempt. As noted in the majority opinion, before a person may be'held in contempt for violating a court order, the order must be in definite terms as to the duties imposed, by expressed commands rather than implied. Hodges v. Gray, 321 Ark. 7, 901 S.W.2d 1 (1995). The majority opinion takes the position that the court’s directive was not entirely clear. I disagree. The court expressly directed Carrick to return to court on dates certain with an attorney. This has every appearance of being an expressly defined command. There is no question that Carrick did not comply with this expressly defined command. What Carrick .did do was to engage in behavior that was an attempt to wield his right to self-representation in order to manipulate the process of his criminal proceedings. Despite the court’s determination that Carrick was unable to represent himself and its | ¡¡.¡.repeated, clear orders directing Carrick to either hire an attorney or cooperate with the public defender, Carrick refused to do either and insisted that he would represent himself Carrick’s repeated refusal to abide by the court’s instructions, his recurring appearances before the court without counsel, and his persistent quarreling with the court clearly constituted “disorderly, contemptuous, or insolent behavior” that warranted the court’s contempt finding. Arkansas law is settled that an act is contemptuous if it interferes with the order of the court’s business or proceedings or reflects upon the court’s integrity. Perroni v. State, 358 Ark. 17, 186 S.W.3d 206 (2004); Allison v. DuFresne, 340 Ark. 583, 12 S.W.3d 216 (2000). Our supreme court has also held that the disobedience of any judgment, order, or decree of a court having jurisdiction to enter it is such an interference with the administration of justice as to constitute contempt. Ivy v. Keith, 351 Ark. 269, 92 S.W.3d 671 (2002). The majority nonetheless suggests that “there is some question whether a lawful order even existed,” noting that the circuit court’s directive for Carrick to hire an attorney was never reduced to writing and entered as of record. In raising this proposition, the majority cites Watts v. State, 2016 Ark. App. 16,. 480 S.W.3d 212, as holding that “an oral order is ‘simply not effective until entered of record.’” 2016 Ark. App. 16, at 3,480 S.W.3d 212. Watts, however, was clearly referring to the entry of a judgment and commitment order, as it held that a defendant’s probation could not be revoked when there was never an order of record sentencing her to probation. Clearly, one may be held in contempt for refusing to abide by a direct court order, even where that order was never reduced to writing. For example, in Thacker v. State, 2015 Ark. App. 573, 473 S.W.3d 583, this court affirmed the circuit court’s use of direct ^contempt power where a witness refused' to comply with the court’s oral direction to pull up his pánts. Watts is simply inapplicable to the case at bar. Because a defendant must be represented in such proceedings, because Carrick did, not qualify for the services. of the public defender, and because Carrick had both rescinded his invocation of the right to self-representation and been found incompetent to represent himself, I do not believe that the circuit court lacked the power or authority to order Carrick to obtain counsel. Given that the, court possessed the jurisdiction to enter such an order, the majority errs when it looks behind the order to determine its validity. Ultimately, the majority opinion stands for the proposition that a defendant can defy a clear court directive, become argumentative with the court, use coy and intemperate behavior in the court’s presence, and yet not be held in contempt. In looking behind the court’s order, the majority is allowing the exception to swallow the rule. I therefore dissent. Gladwin, C.J., and Abramson, J., join. . The right to self-representation is not absolute and may be terminated in situations where a defendant has demonstrated disruptive behavior or used the right as a tactic for delay, for. disruption, for distortion of the system, or for manipulation of the trial process. See Brown v. Gibson, 2012 Ark. 285, at 4, 423 S.W.3d 34, 37 (citing Monts v. Lessenberry, 305 Ark. 202, 806 S.W.jtd 379 (1991) (per curiam)). . In its "Order of. Criminal Contempt;” the court stated, "After finding the Defendant is ' not competent to represent himself, the Court released the jury and ordered the Defendant to appear on December 4, 2014, with counsel.”